UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID MARC JOSEPH,** | **2:24-CV-11382-TGB-KGA** |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS (ECF NO. 3)** |
| **PHREESIA, INC.** | |
| Defendant. | |

Plaintiff David Marc Joseph ("Joseph") filed a civil action against Defendant Phreesia, Inc. ("Defendant" or "Phreesia"), his former employer, for discrimination based on his disability under the Americans with Disabilities Act ("ADA"). ECF No. 1. Maintaining that such a claim is subject to an arbitration clause in Joseph's employment agreement, Phreesia moved to compel arbitration and stay the proceedings. ECF No. 3. Plaintiff opposes the motion. ECF No. 6. The Court heard oral argument on January 15, 2025.

For the following reasons, based on the parties' briefs and oral arguments, and the valid agreement to arbitrate between the parties, the Court will **COMPEL** arbitration in the Eastern District of Michigan to be conducted pursuant to the terms of the agreement and **STAY** the proceedings pending such arbitration.

## I.   BACKGROUND

Defendant Phreesia, Inc. operates a patient intake software utilized by several healthcare organizations.[1] Joseph alleges the was "terminated without severance while he was on leave of absence for a serious medical condition" in violation of the American with Disabilities Act ("ADA"). ECF No. 1, PageID.1. Joseph began working for Phreesia on or about July 11, 2022. ECF No. 1, PageID.2, ¶ 8. After being hired, Joseph allegedly began suffering from severe insomnia and chronic fatigue, which interfered with his day-to-day life. *Id*. at PageID.2–3, ¶¶ 10-11. He sought treatment and obtained a diagnosis of hyperthyroidism in January 2023. *Id*. at PageID.3, ¶ 12. Despite treatment, Joseph states his symptoms became debilitating, such that he informed his supervisor in February 2023 about his condition. *Id*. at ¶¶ 14-15. Phreesia's Benefits Manager, Ms. Wendy Bunn, allegedly encouraged Joseph to take some time off. *Id*. at ¶ 16. Joseph's doctor, Ms. Rachel Blea, subsequently sent a letter recommending a few weeks off work. *Id*. at ¶ 19. As directed, Plaintiff applied for Short Term Disability Benefits and provided updates regarding his health status. *Id*. at PageID.3–4, ¶¶ 20-21. He had a severe setback around February 26, 2023, a day before his return-to-work date, and sought a leave extension until March 13, 2023. *Id*. at PageID.4, ¶¶ 22-25.

---

[1] Phreesia, Inc. Home Page, https://www.phreesia.com/ (last visited Jan. 15, 2025).

On March 2, 2023, he sent a letter to Ms. Bunn asking to explore reasonable accommodations upon his return to work, including a "modified work schedule." *Id.* at PageID.4–5, ¶¶ 27-28. On March 10, 2023, Joseph informed Ms. Bunn that his condition worsened again, but expressed his desire to return to work with reasonable accommodations in an email sent ten days later. *Id.* at PageID.5, ¶¶ 30-32. While his accommodation request was still pending, Joseph alleges he was terminated with no explanation on March 31, 2023. *Id.* at PageID.6, ¶¶ 37-38.

The Equal Employment Opportunity Commission ("EEOC") gave him a Notice of Right to Sue on March 8, 2024. *Id.* at PageID.6, ¶ 40. Joseph filed a complaint in the Eastern District of Michigan on May 24, 2024, alleging a single count of employment discrimination under the ADA. *Id.* But Phreesia alleges that Joseph's claim of discrimination is subject to arbitration because two months before Joseph started working, he signed an agreement—to confirm the parties' understanding with regards to his future employment and agreement not to compete (hereinafter, "Agreement")—which contained an arbitration provision. ECF No. 3, PageID.20–21. The Agreement states that:

> *Any controversy, dispute or claim arising out of or in connection with this Agreement, will be settled by final and binding arbitration to be conducted in New York, New York pursuant to the national rules for the resolution of employment disputes of the American Arbitration Association then in effect.* The decision or award in any such arbitration

will be final and binding upon the parties and judgment upon such decision or award may be entered in any court of competent jurisdiction or application may be made to any such court for judicial acceptance of such decision or award and an order of enforcement. In the event that any procedural matter is not covered by the aforesaid rules, the procedural law of the State of New York will govern. *Any disagreement as to whether a particular dispute is arbitrated under this Agreement shall itself be subject to arbitration in accordance with the procedures set forth herein.*

ECF No. 3-1, PageID.36, ¶ 8h (emphasis added). The Agreement also specifies that it should be "construed in accordance with and governed by the law of the State of New York." *Id*. at ¶ 8g.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). As such, the FAA requires federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Under Section 3 of the FAA, and upon finding that an issue is referable to arbitration pursuant to a written agreement, a federal court may stay proceedings until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3. And under Section 4 of the FAA, when one of the parties to the arbitration

agreement fails or refuses to arbitrate, the party seeking to compel arbitration may petition a federal court for an order directing that such arbitration proceed in the manner provided in the agreement. 9 U.S.C. § 4 (providing that the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed").

Before courts can refer a dispute to arbitration, they must decide multiple "gateway" questions of "arbitrability." *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Courts must first determine: (1) whether the parties agreed to arbitrate, (2) the scope of that agreement, (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable, and (4) if only some, but not all, of the claims are arbitrable, whether to stay the remainder of the proceedings pending arbitration. *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003)(citing to *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *but see EEOC v. Waffle House, Inc.*, 534

U.S. 279, 294 (2002)("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.").

In general, such gateway or arbitrability questions are for judicial determination, "[u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). For instance, parties can contractually agree to arbitrate such threshold issues concerning the arbitration agreement (also known as a "delegation provision"). *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. at 68–69.

## III.   DISCUSSION

First, the Court must determine whether the parties have validly agreed to arbitrate. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. If they did, the Court must then determine whether the arbitration agreement covers Joseph's ADA claim, *see id.*, unless the parties "clearly and unmistakably" provide that such threshold issue itself is arbitrable, *see AT&T Techs.*, 475 U.S. at 649.

### A. The Arbitration Agreement is Valid.

Like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681,

687 (1996). The parties here do not dispute that there is a valid employment agreement between them which includes an arbitration clause. Phreesia provided evidence of an Agreement between the parties, which Joseph electronically signed on May 3, 2022. ECF No. 3-1, PageID.37.

Under federal law,[2] once the party seeking to compel arbitration makes a prima facie showing that an agreement to arbitrate existed, the party opposing arbitrability bears the burden to "put the making of that agreement 'in issue'" or show that the agreement is "*inapplicable* or invalid." *Moton v. Maplebear Inc.*, 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016)(citations omitted)(emphasis added). While Joseph does not dispute the validity of the agreement, he argues the arbitration agreement is *inapplicable* to the ADA claim.

Recall that the arbitration agreement in this case indicates that "[a]ny controversy, dispute or claim arising out of or in connection with this Agreement will be settled by final and binding arbitration." ECF No. 3-1, PageID.36. The Sixth Circuit held that,

---

[2] Plaintiff does not dispute that New York law applies to the arbitration agreement. In Michigan, an express choice-of-law clause in a contract will be applied in a dispute over the "substantial validity" of a contract. *White v. ACell, Inc.*, 779 Fed. Appx. 359, 363 (6th Cir. 2019)(citing to Restatement (Second) of Conflict of Laws § 187(2), at cmt. d (1988)). But Plaintiff argues the agreement *itself* is not applicable to the dispute and therefore New York law should not govern the dispute about his ADA claim.

> When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n. 10 (6th Cir. 2006)(emphasis in original)(internal quotation marks and citations omitted).

Here, the agreement is arguably even broader than the one in *Solvay*, as it includes any dispute "arising out of *or in connection with*" the Agreement. And it does not contain any express provision excluding a claim arising under the federal ADA or any other specific claims. *See, e.g.*, *United States v. Miraca Life Sciences, Inc.*, 2021 WL 679275, at *3–4 (M.D. Tenn. Feb. 22, 2021)(noting that the arbitration agreement "carved out" claims for equitable relief from the arbitration provision).

While Plaintiff asserts that his claim against Defendant is on the basis of "statutorily protected conduct that is not the subject of the [Agreement]," *U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. Appx. 500, 504 (6th Cir. 2014), the fact that he is asserting a statutory right is not sufficient to rebut the presumption in favor of arbitration, absent a showing that "Congress itself has evinced an intention to preclude a waiver of judicial remedies" under the ADA,

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Congress has not done so, and courts have consistently referred ADA claims to arbitration. *See, e.g.*, *Gavette v. United Wholesome Mortgage, LLC*, No. 24-1557, at *4 (6th Cir. Jan. 28, 2025)(unpublished)(citing to 42 U.S.C. § 12212)(noting that "[t]he ADA itself recognizes that 'the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under th[e ADA]'"); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. Appx. 482, 487 n. 1 (6th Cir. 2008)(indicating that plaintiff "[w]isely . . . does not dispute that [her] employment discrimination claims [under the ADA] may be subject to mandatory arbitration"); *Memmer v. United Wholesale Mortg.*, No. 23-cv-10921, 2024 WL 187697, at *5 (E.D. Mich. Jan. 16, 2024)(finding plaintiff's employment discrimination claim under the ADA to be arbitrable); *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. Appx. 19, 22 (2d Cir. 2016)(finding that an arbitration agreement in an employment contract between a doctor and a medical practice was applicable to claims under the ADA, absent a showing that he would be unable to vindicate his statutory rights in arbitration).

Therefore, the arbitration agreement is valid and Congress did not preclude arbitration of Joseph's ADA claim.

### B. Whether Plaintiff's ADA Claim Falls Within the Scope of the Arbitration Agreement Is Itself Subject to Arbitration.

The gist of the dispute here revolves around the scope of the arbitration agreement: while Phreesia argues the ADA claim arose out of, or was in connection with, the Agreement, Joseph argues the Agreement is inapplicable to the ADA claim because it "is not a claim for a violation of the . . . Agreement; it is completely separate from the contract and asserts an independent claim that would exist even without the contract." *See U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. Appx. 500, 504 (6th Cir. 2014)(finding a False Claims Act retaliation claim not to "arise under" the terms of an employment agreement containing an arbitration clause); *see also Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 505 (6th Cir. 2007)(citing to *Fazio,* 340 F.3d at 395)("[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement."). Plaintiff argues the ADA claim can be resolved "without reference" to the agreement because he need not refer to the employment agreement to assert his ADA claim—and in fact did not mention it in his complaint—and the Court need not "examine and possibly construe or interpret" the terms of the agreement to determine whether Defendant discriminated against Plaintiff. *See NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814–15 (6th Cir. 2008)(noting that the court needed to examine the agreement containing the arbitration clause

to determine whether defendant lawfully used a copyright by obtaining plaintiff's authorization). But the Sixth Circuit explained that where an action can be resolved without reference to an arbitration agreement, "compelled arbitration is inappropriate, *unless the intent of the parties indicates otherwise*." *NCR Corp.*, 512 F.3d 807, 814 (6th Cir. 2008)(emphasis added).

Here, regardless of whether Plaintiff's ADA claim could be resolved without reference to the agreement,[3] the parties explicitly agreed that "[a]ny disagreement as to whether a particular dispute is arbitrated

---

[3] The Court need not decide this issue, as further explained below. But the Court notes that none of the cases Plaintiff cited involved ADA claims, whereas Defendant cited to a case in this District where the court concluded plaintiff's ADA claim fell within the scope of the arbitration agreement which provided that "[i]f a material dispute arises under this Agreement . . . the parties shall submit such dispute to binding arbitration." *Memmer*, 2024 WL 187697, at *5. Furthermore, while it is possible that Joseph could describe his employment relationship with Phreesia "without the agreement," for instance by reference to some other source, it is possible the Court would need to examine certain provisions of the employment agreement to evaluate the conditions of Joseph's employment, such as the provision about at-will employment, benefits, or medical leave. *See NCR Corp.*, 512 F.3d at 814 (noting that the court would not need to reference the agreement to determine if plaintiff owned a copyright, but would need to reference the agreement to determine if any authorization was provided to defendant); *United States v. Miraca Life Sciences, Inc.*, 2021 WL 679275, at *2 (M.D. Tenn. Feb. 22, 2021)(noting that a False Claims Act retaliation claim *does not have any connection with any provision of an employment agreement*, even if it may have a connection with plaintiff's employment relationship, as it was his status as an employee that allowed him to learn of defendant's alleged violations of the FCA).

under this Agreement shall itself be subject to arbitration." ECF No. 3-1, PageID.36, ¶ 8h. In general, the question of arbitrability is an issue for judicial determination, "[u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs.*, 475 U.S. at 649. Clear and unmistakable evidence of an agreement to arbitrate arbitrability (also known as a "delegation clause") includes "an express agreement to do so" or incorporation of the American Arbitration Association ("AAA") rules into the agreement. *See Rent-A-Cntr., W., Inc.*, 561 U.S. at 79–80 (Stevens, J., dissenting on other grounds); *Contec Corp. v Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Here, the agreement contains both an explicit agreement to arbitrate arbitrability and incorporation of the AAA rules, therefore the parties "clearly and unmistakably" agreed to arbitrate arbitrability issues.

And when a valid arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," *Henry Schein, Inc.*, 586 U.S. at 65, "unless [a party] challenge[s a] delegation provision *specifically*," *Rent-A-Ctr., W., Inc.*, 561 U.S. at 72 (emphasis added). Just like the party opposing arbitration in *Rent-a-Center* only challenged the validity of the contract *as a whole*, rather than the delegation provision *specifically*, and failed to mention the delegation provision, Joseph similarly failed to challenge the delegation provision in his brief and during oral argument and only focused on the interpretation

of the term "arising out of, or in connection with" in the arbitration clause. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 72.

Furthermore, none of the cases Plaintiff cited (except one) involved arbitration agreements containing delegation provisions which provided that the issue of arbitrability itself would be submitted to arbitration.[4] Consequently, those courts were not required to refer the arbitrability issue to arbitration and could directly determine whether or not the claims fell within the scope of the arbitration agreement. In the one case Plaintiff cited which did involve a delegation clause, the court rejected the defendant's argument that the issue of arbitrability itself should be arbitrated because the defendant waived the argument and the arbitration agreement "carved out" claims for equitable relief from the arbitration and delegation provisions, preventing a finding of "clear and unmistakable" intent to delegate arbitrability as to the plaintiff's

---

[4] *See, e.g., NCR Corp.*, 512 F.3d at 818–19 (finding some, but not all, of plaintiff's copyright infringement, tortious interference with contract and unfair competition claims to be arbitrable); *Paige*, 566 F. Appx. at 505 (finding a retaliation claim under the False Claims Act to be beyond the scope of the arbitration provision contained in an employment agreement); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 648 (6th Cir. 2008)(finding a claim that arose before the execution of an arbitration agreement to be subject to arbitration); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396 (6th Cir. 2003)(finding plaintiff's claims "at the very least create doubts about the arbitrability of the theft claims, which should have been resolved in favor of arbitration"); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008)(finding that plaintiff's claims against defendant fell within the arbitration agreement's scope).

retaliation claim under the False Claims Act. *Miraca Life Sciences, Inc.*, 2021 WL 679275, at \*3–4. Here, there is no carve-out in the arbitration provision and, as explained earlier, the parties have "clearly and unmistakably" referred issues of arbitrability to arbitration. Therefore, absent a specific challenge to the delegation clause, the Court is not allowed to decide the instant dispute about the scope of the arbitration agreement. This is true even if Defendant's argument that the ADA claim is subject to arbitration were deemed "groundless," *Henry Schein, Inc.*, 586 U.S. at 71, or if the delegation provision were ambiguous, because any doubt regarding the scope of arbitrable issues would be properly resolved in favor of arbitration, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Therefore, the dispute about the scope of the agreement or whether the ADA claim is subject to arbitration cannot be decided by this Court and must be referred to arbitration. Nothing in this opinion should be construed to bind the arbitrator's independent evaluation of the parties' arguments regarding the scope of the arbitration agreement as applied to the ADA claim.

### C. The Court Can Compel the Parties to Arbitrate in the Easter District of Michigan.

In a final attempt to avoid arbitration, Joseph contends that the Court lacks authority to compel arbitration *in New York, New York* pursuant to the agreement because "the Federal Arbitration Act prevents

14

federal courts from compelling arbitration outside of their own district."
*Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018
(6th Cir. 2003)(citing to 9 U.S.C. § 4, stating that the arbitration must
take place "within the district in which the petition for an order directing
such arbitration is filed"); *see also J.P. Morgan Sec. Inc. v. Louisiana
Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 80–83 (S.D.N.Y. May 3,
2010)(finding the court lacked authority to compel arbitration in New
Orleans, Louisiana, because, where the arbitration agreement designates
a specific forum, only a district court in that forum may compel
arbitration)(citing to *Inland Bulk Transfer Co.*, 332 F.3d at 1018).

But this argument does not help Plaintiff avoid arbitration. The
FAA provides for "stays of proceedings in federal district courts when an
issue in the proceeding is referable to arbitration, § 3, and for orders
compelling arbitration when one party has failed, neglected, or refused
to comply with an arbitration agreement, § 4." *Gilmer v.
Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The requirement
that courts compel arbitration "within the[ir] district" in Section 4 of the
FAA is not included in Section 3, which allows courts to stay proceedings
pending arbitration "in accordance with the terms of the agreement"—
even if arbitration occurs outside the district. *See, e.g., Anderjaska v.
Bank of Am., N.A.*, 523 F. Supp. 3d 456, 463–64 (S.D.N.Y. March 5,
2021)(noting that § 4 of the FAA precludes the court from compelling
arbitration outside the district despite the parties' agreement, but § 3 of

the FAA allows the court to issue an order staying the litigation pending final outcome of the arbitration); *Joliat v. Majella Found.*, 2013 WL 495284, at *5 (D. Conn. Feb. 6, 2013)(staying action pending arbitration of arbitrable claims in Texas pursuant to the agreement). Thus, even if the Court lacks authority to compel arbitration in New York, it has the authority to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

But here, both parties waived enforcement of the forum-selection clause. Defendant waived enforcement of the forum-selection clause because it is asking the Court to compel arbitration in Michigan. *See* ECF No 7, PageID.121 ("[T]he forum selection clause could be carved out and the Agreement read to require arbitration in Michigan under New York law."); *see also Moton*, 2016 WL 616343, at *8 ("Since Defendant has expressly waived the fee-splitting provision and forum selection clauses, those provisions are severed from the Agreement [and] [t]he arbitration clause as a whole remains enforceable."). And by filing the instant action in the Eastern District of Michigan, Plaintiff similarly waived enforcement of the forum-selection clause as to the ADA claim. *See, e.g.*, *Ferraro Foods, Inc. v. M/V Izzet Incekara*, 2001 WL 940562, at *4 n.3 (S.D.N.Y. Aug. 20, 2001)("[T]he actions of plaintiffs, as well as defendants, may waive the forum selection clause, and [ ] plaintiffs have done so by filing in the District of New Jersey rather than in Turkey."); *Lexington Ins. Co.*, 795 F. Supp. 2d at 1091 (citing to *Continental Grain*

16

*Co. v. Dant & Russell*, 118 F.2d 967, 969 (9th Cir. 1941))(noting that, where the plaintiff seeking to arbitrate in New York had voluntarily filed suit in Oregon, the Ninth Circuit concluded it was "fair to bind the plaintiff to suit in Oregon, notwithstanding a forum selection clause designating New York"). In addition, during oral argument on the motion, in response to the Court's questioning both parties stated they would agree to arbitration in Michigan. Thus, given the lack of any explicit logical connection of the instant case to New York, Plaintiff's filing the instant action in Michigan and residing here, and Defendant having agreed to arbitration in Michigan, the Court finds that the parties waived enforcement of the forum-selection clause such that the Court can compel arbitration within the Eastern District of Michigan.

To conclude, the Court finds that the parties validly agreed to arbitration, including on the threshold question of *whether Plaintiff's ADA claim is arbitrable*. This question must be decided by an arbitrator, not this Court, and if decided in the affirmative, then Plaintiff's claim is subject to arbitration. The Court further finds that the parties have agreed to arbitration in the Eastern District of Michigan. Defendant's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration is **GRANTED**. This matter is referred to arbitration and the case is stayed pending the arbitrator's decision on the arbitrability of Joseph's ADA claim. If the arbitrator finds Plaintiff's claim to be arbitrable, then

the arbitrator will proceed to arbitrate that claim.[5] The parties are to submit a report to the Court on the progress of the arbitration proceedings **within ninety (90) days** of this Court's order. Should the arbitrator find Joseph's ADA claim to be arbitrable, the Court will dismiss the action. *See Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 366–67 (S.D.N.Y. June 20, 2003)("As no useful purpose exists for directing a stay of this litigation where all of the issues in dispute are subject to arbitration, the Court will dismiss the action rather than issue a stay."). Should the arbitrator find that Plaintiff's claim is not arbitrable, Plaintiff may file a motion to lift the stay, and this case will continue.

## IV.   CONCLUSION

For all the reasons stated above, Defendant's Motion to Compel Arbitration is **GRANTED**. The parties are **COMPELLED** to arbitration within the Eastern District of Michigan in order to determine whether Joseph's ADA claim is arbitrable, and if so, to arbitrate such claim.

---

[5] The Court notes Phreesia's request for attorney's fees but finds it premature. A stay of proceedings pending arbitration does not make the defendant a "prevailing party" under the ADA. *See* 42 U.S.C. § 12205. If Joseph's ADA claim is found to be arbitrable, Rule 39(d) of the AAA provides that "[t]he *arbitrator* may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law" (emphasis added).

Accordingly, this case is hereby **STAYED** pending the outcome of such arbitration.

**IT IS FURTHER ORDERED** that the parties shall submit a joint report on the status of the arbitration proceedings within 90 days of the date of this Order.

**SO ORDERED**.

Dated: January 31, 2025          /s/ Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE