UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID MARC JOSEPH,**<br><br>Plaintiff,<br><br>v.<br><br>**PHREESIA, INC.**<br><br>Defendant. | 2:24-CV-11382-TGB-KGA<br><br>HON. TERRENCE G. BERG<br><br>**ORDER<br>DENYING PLAINTIFF'S<br>MOTION TO LIFT STAY<br>(ECF NO. 10);**<br><br>**DENYING DEFENDANT'S<br>MOTION TO DISMISS<br>PLAINTIFF'S COMPLAINT<br>(ECF NO. 12);**<br><br>**DENYING PLAINTIFF'S MOTION<br>FOR LEAVE TO FILE NOTICE<br>OF SUPPLEMENTAL<br>AUTHORITY<br>(ECF NO. 17);**<br><br>**AND DIRECTING PLAINTIFF TO<br>INITIATE ARBITRATION ON<br>THE QUESTION OF<br>ARBITRABILITY** |

The posture of this case is straightforward. On January 31, 2025, the Court entered an Order referring the parties to arbitration for the specific purpose of determining whether Plaintiff's ADA claim is arbitrable under the parties' agreement. *See* ECF No. 9. But the parties

failed to cooperate to initiate such arbitration proceedings, choosing instead to file three additional motions on the issue of initiating court-ordered arbitration, rather than complying with the Court's Order. And now, almost a year later, no arbitration has taken place.

The Court now addresses the pending motions. For the reasons set forth below, Plaintiff's Motion to Lift the Stay (ECF No. 10) is **DENIED**, Defendant's Motion to Dismiss (ECF No. 12) is **DENIED**, and Plaintiff's Motion for Leave to File Notice of Supplementary Authority (ECF No. 17) is **DENIED**. Instead, the Court **DIRECTS** Plaintiff to initiate arbitration proceedings within fourteen (14) days of this Order on the limited issue of whether his ADA claim is arbitrable or should proceed in federal court.

**I.   BACKGROUND**

On January 31, 2025, the Court granted Defendant's motion to compel arbitration and stay proceedings. ECF No. 9. The Court did not decide whether the ADA claim should be arbitrated, but rather left that question to the arbitrator, pursuant to the terms of the parties' agreement.[1] The Order specifically stated:

> To conclude, the Court finds that the parties validly agreed to arbitration, including on the threshold question of whether Plaintiff's ADA claim is arbitrable. This question must be

---

[1] Thus, to the extent Defendant asserts that the Court granted Defendant's Motion to Compel Arbitration in its entirety, that argument is disingenuous.

2

decided by an arbitrator, not this Court, and if decided in the affirmative, then Plaintiff's claim is subject to arbitration. The Court further finds that the parties have agreed to arbitration in the Eastern District of Michigan. Defendant's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration is GRANTED. This matter is referred to arbitration and the case is stayed pending the arbitrator's decision on the arbitrability of Joseph's ADA claim. If the arbitrator finds Plaintiff's claim to be arbitrable, then the arbitrator will proceed to arbitrate that claim. The parties are to submit a report to the Court on the progress of the arbitration proceedings within ninety (90) days of this Court's order. Should the arbitrator find Joseph's ADA claim to be arbitrable, the Court will dismiss the action. *See Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 366–67 (S.D.N.Y. June 20, 2003)("As no useful purpose exists for directing a stay of this litigation where all of the issues in dispute are subject to arbitration, the Court will dismiss the action rather than issue a stay."). Should the arbitrator find that Plaintiff's claim is not arbitrable, Plaintiff may file a motion to lift the stay, and this case will continue.

IV. CONCLUSION

For all the reasons stated above, Defendant's Motion to Compel Arbitration is **GRANTED**. The parties are **COMPELLED** to arbitration within the Eastern District of Michigan in order to determine whether Joseph's ADA claim is arbitrable, and if so, to arbitrate such claim.

ECF No. 9, PageID.162-63.

Despite this Court's Order compelling arbitration of the arbitrability issue on January 31, 2025, the parties still have not

3

commenced arbitration.[2] The crux of the issue, at this stage, stems from the fact that the Order compelled "the parties" to arbitrate without directing a specific party to initiate such proceedings. Plaintiff takes the position that Defendant, as the proponent of arbitration, should have initiated the proceeding, and that failure to do so constitutes waiver of arbitration as well as contempt of the Court's order. ECF No. 10. Defendant responded that the terms of the agreement, which the Court referred to in the Order, places the duty to initiate arbitration on Plaintiff, and that failure to do so warrants dismissal. ECF Nos. 11 & 12. Thus, Plaintiff filed a Motion to Lift the Stay (ECF No. 10), and Defendant filed a Motion to Dismiss for Failure to Prosecute (ECF No. 12).

## II. DISCUSSION

### A. Responsibility to Initiate Arbitration

As a preliminary matter, the question of who would initiate arbitration was neither raised nor litigated prior to the Court's January 31, 2025 Order. While the Court did not explicitly specify which party was responsible for initiating arbitration, the Court unequivocally ordered "the parties" to submit to arbitration on the question of

---

[2] This is a rare situation in which it appears that the parties have willfully disregarded and failed to comply with a Court Order. The parties' tactics here—interposing additional motions practice rather than carrying out the clear direction of the Court's Order—demean the authority of the Court, waste valuable judicial resources, and unnecessarily increase litigation costs to the parties.

4

arbitrability of the ADA claim "to be conducted pursuant to the terms of the agreement." ECF No. 9, PageID.146. The agreement, in turn, provides that "[a]ny disagreement as to whether a particular dispute is arbitrable under this Agreement shall itself be subject to arbitration in accordance with the procedures set forth herein," that is "pursuant to the national rules for the resolution of employment disputes of the American Arbitration Association then in effect." ECF No. 3-1, PageID.36, ¶ 8h. That paragraph is reproduced verbatim below:

> h. Arbitration. Any controversy, dispute or claim arising out of or in connection with this Agreement, will be settled by final and binding arbitration to be conducted in New York, New York pursuant to the national rules for the resolution of employment disputes of the American Arbitration Association then in effect. The decision or award in any such arbitration will be final and binding upon the parties and judgment upon such decision or award may be entered in any court of competent jurisdiction or application may be made to any such court for judicial acceptance of such decision or award and an order of enforcement. In the event that any procedural matter is not covered by the aforesaid rules, the procedural law of the State of New York will govern. Any disagreement as to whether a particular dispute is arbitrable under this Agreement shall itself be subject to arbitration in accordance with the procedures set forth herein.

The American Arbitration Association ("AAA") rules for the resolution of employment disputes discuss three scenarios for initiating arbitration proceedings.[3]

> *First*, "[a]rbitration under an arbitration agreement naming the AAA shall be initiated by the initiating party (referred to as the "claimant") filing with the AAA a Demand for Arbitration[.]" AAA Rules at 8, R-4(a)(i).

---

[3] *See* AMERICAN ARBITRATION ASSOCIATION, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 8 (2025), available at https://www.adr.org/sites/default/files/EmploymentRules_Web_3.pdf (last visited Jan. 14, 2026) (hereinafter, "AAA Rules").

5

> *Second*, "[a]rbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, a copy of the court order, or a copy of any applicable arbitration agreement from the parties' contract, which provides for arbitration." *Id.*, R-4(a)(ii).
>
> *Third*, "[p]arties to an existing dispute who have agreed to arbitration administered by the AAA may commence an arbitration under these Rules by filing a written submission agreement and the administrative filing fee." *Id.*, R-4(a)(iii).

Here, if the parties had simply followed the Court's Order, they could have worked together and cooperated to file the requisite written submission agreement to initiate arbitration, as provided in the third scenario. But without such cooperation, the AAA rules provide, under the second scenario, that when a court orders arbitration, the claimant bears the responsibility to initiate arbitration. *See id.*, R-4(a)(ii).

Thus, because this Court ordered arbitration of the limited arbitrability issue pursuant to the terms of the agreement, including the AAA rules, Plaintiff was responsible for filing the Demand for Arbitration. *See, e.g., Savage v. Hatcher*, No. 2:01-CV-0089, 2009 WL 1119586, at *2 (S.D. Ohio Apr. 27, 2009) (finding that "[i]t is Plaintiff's obligation to ensure that all the necessary steps have been taken to begin the arbitration process" under the AAA and ordering Plaintiff to "file an arbitration demand with the AAA" after parties failed to start court-ordered arbitration for three years); *Burnip v. Credit Acceptance Corp.*, No. 18-CV-1839 (JRT/KMM), 2020 WL 5905322, at *1 (D. Minn. Oct. 6,

2020) (assuming that an order requiring "the parties" to enter arbitration required the Plaintiff to initiate arbitration).

Plaintiff does not cite any case to the contrary. While Defendant's lack of cooperation in initiating arbitration in view of the clear direction of the Court to do so may be less than fully contemptuous, it is hardly worthy of esteem and still constitutes a clear failure to comply with the Court's Order. That being said, at this time, Defendant cannot be deemed to have waived arbitration or to be in contempt of the Court's order. Therefore, Plaintiff's Motion to Lift Stay and Impose Sanctions (ECF No. 10) will be **DENIED**.

### B. Failure to Prosecute

In turn, Defendant argues that Plaintiff's failure to initiate arbitration proceedings pursuant to the January 31, 2025 Order warrants dismissal of the action for failure to prosecute.[4] ECF No. 17. Courts in the Sixth Circuit consider four factors to determine whether a case should be dismissed with prejudice under Federal Rule of Civil Procedure 41(b):

---

[4] Defendant also argues the arbitration claim would be untimely. The Court notes that Defendant never raised the alleged timing issue to the Court's attention, despite the Court's expectation that arbitration be initiated within 90 days of the January 31, 2025 Order. In any event, that is a question for the arbitrator to decide, should the arbitrator find that the ADA claim *is* arbitrable. If the ADA claim is not arbitrable, the timeliness argument would be moot.

7

(1) whether the party's failure is due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dismissed party's conduct;

(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and,

(4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (citation omitted). The "dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Id.* (citation omitted).

Here, dismissal for failure to prosecute is not warranted. Unlike the cases Defendant cited, Plaintiff has not "persistently refused to arbitrate," nor failed to submit status reports or respond to orders to show cause or motions to dismiss for failure to prosecute. *See, e.g.*, *Griggs v. S.G.E. Mgmt., LLC*, 905 F.3d 835, 844–45 (5th Cir. 2018); *Burnip*, 2020 WL 5905322, at *1; *Schoemehl v. Unwin*, No. 4:18-CV-00031-JAR, 2019 WL 2010216, at *2 (E.D. Mo. May 7, 2019). And while Plaintiff did not initiate arbitration before the May 1, 2025 deadline set by the Court for filing a status report, he did take action to notify the Court of the disagreement.

8

It is sufficient, in the spirit of the Court's January 31, 2025 Order, to grant Plaintiff additional time to submit the matter to arbitration on the issue of arbitrability, and warn Plaintiff that failure to do so may result in dismissal. *See Pruteanu v. Team Select Home Care of Missouri, Inc.*, No. 4:18-CV-01640-AGF, 2021 WL 786069, at *3 (E.D. Mo. Feb. 24, 2021) ("Having rejected Plaintiff's argument that Defendants are the parties obligated to initiate arbitration, the Court will give Plaintiff one further opportunity to pursue her claims."); *Griggs*, 905 F.3d at 844-45 (dismissing for failure to prosecute where plaintiff "persistently" failed to initiate arbitration because plaintiff disagreed with the court's conclusion that the matter must be arbitrated).

The Court understands that Plaintiff continues to oppose arbitration of the ADA claim. Plaintiff's filing of the Demand for Arbitration will not waive that argument. The AAA rules indicate that parties will have an opportunity to "object to the . . . arbitrability of a claim," which the arbitrator may rule on "as a preliminary matter." AAA Rules at 11, R-7(c). Plus, in filing the Demand for Arbitration, Plaintiff will provide the arbitrator with the Court's January 31, 2025 Order as well as the present Order, and may point out that the referral is made pursuant to the Order of this Court, not because Plaintiff believes the issue is arbitrable, and is for the limited purpose of determining whether the ADA claim is arbitrable.

Accordingly, Defendant's Motion to Dismiss (ECF No. 12) will be **DENIED** and Plaintiff will be **DIRECTED** to initiate arbitration proceedings on the issue of arbitrability within fourteen (14) days.

### C. Unconscionability

Finally, Plaintiff's attempt to claim that the arbitration agreement is unconscionable in his Motion for Leave to File Notice of Supplemental Authority (ECF No. 17) is not well taken. While Plaintiff asks the Court to consider new Michigan Supreme Court precedent[5] regarding unconscionability of adhesion contracts on the basis that it "will aid the court in its evaluation of the precise issues before the court," ECF No. 17, PageID.379, the "precise issue" before the Court at this juncture is Plaintiff's responsibility to initiate arbitration, not the validity of the arbitration agreement. The Court already determined that the arbitration agreement was valid in its January 31, 2025 Order, noting that Plaintiff "[did] not dispute the validity of the agreement" and that "the parties [did] not dispute that there [wa]s a valid employment agreement between them which include[d] an arbitration clause." ECF No. 9, PageID.152.

Even if this Court were to construe Plaintiff's request to consider supplemental authority as a motion to reconsider its January 31, 2025 Order, Plaintiff never raised the issue of unconscionability when the

---

[5] *Rayford v. Am. House Roseville I, LLC*, No. 163989, --- N.W.3d ---, 2025 WL 2177754 (Mich. July 31, 2025).

10

validity of the agreement *was* before the Court, and in any event, such a motion would be untimely. Indeed, motions for reconsideration are disfavored, must be filed within 14 days after entry of the order, and may be brought only upon the following grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision

E.D. Mich. L.R. 7.1(h)(2)

Because Plaintiff never raised the issue of unconscionability, he cannot claim that the Court made a mistake based on the law before the court at the time of its prior decision. It follows that because Plaintiff's argument that the arbitration agreement is unconscionable was not raised, he cannot now argue that an intervening change in controlling law regarding unconscionability warrants a different outcome either. Furthermore, the alleged intervening change in controlling law (to the extent it would even apply to this case) highlights that "traditional contract defenses—including unconscionability" have always "remained," even under the newly-overruled precedent. *See Rayford*, 2025 WL 2177754, at *15. In any event, Plaintiff's motion was filed on October 21, 2025, almost nine months after the Court's determination

11

that the arbitration agreement was valid, and almost three months after the Michigan Supreme Court issued *Rayford*.

Therefore, Plaintiff's Motion for Leave to File Notice of Supplemental Authority (ECF No. 17) will be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Lift the Stay (ECF No. 10) is **DENIED**, Defendant's Motion to Dismiss (ECF No. 12) is **DENIED**, and Plaintiff's Motion to File Notice of Supplementary Authority (ECF No. 17) is **DENIED**;

**IT IS FURTHER ORDERED THAT PLAINTIFF SHALL INITIATE THE ARBITRATION PROCESS** by filing a Demand for Arbitration with the AAA within fourteen (14) days of entry of this Order. Such a demand shall not be construed as any concession by Plaintiff on the question of whether the matter is subject to arbitration;

**IT IS FURTHER ORDERED THAT PARTIES SHALL FILE A JOINT STATUS REPORT** within twenty-one (21) days of entry of this Order reporting on the progress of the arbitration proceedings, and **SHALL FILE** a final joint status report within seven (7) days of the completion of the arbitration proceedings, which shall describe the outcome of such proceedings;

**IT IS FURTHER ORDERED THAT** failure to comply with this Order will result in the commencement of contempt proceedings;

13

**IT IS FURTHER ORDERED THAT** this case will remain **STAYED** until further Order of the Court.

**SO ORDERED**.

Dated: January 29, 2026
/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE